IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF FLORIDA

| | |
|---|---|
| **PBR SALES, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**PEZCO INTERNATIONAL, LLC and JUAN M. SANCHEZ**<br><br>**Defendants.** | Civil Action No. |

**ORIGINAL COMPLAINT AND APPLICATION FOR
<u>PRELIMINARY INJUNCTION</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, PBR Sales, LLC (hereinafter, "PBR") file this Original Complaint and Application for Preliminary Injunctive Relief and seek damages, profits disgorgement, damages, attorneys' fees, and costs, against Defendant, Pezco International, LLC and Defendant, Juan M. Sanchez (hereinafter, "Pezco", "Sanchez" or "Pezco Defendants").

1

## INTRODUCTION

This case involves the Pezco Defendants' blatant, illegal and unauthorized use of Plaintiff PBR's wired funds of $310,400 for its own use under the pretense of purchasing oil and gas product.

To perpetuate its deception, Pezco, by and through Sanchez, made repeated and known false statements about its ability to source 265,000 gallons of Gasoil D2, the whereabouts of the money sent by PBR to purchase the fuel, and its relationship with the purported refinery. Moreover, the Pezco Defendants refuses to provide proof of any legitimacy of the transaction. This suit seeks to stop the Pezco Defendants from further unlawfully dissipating the received money, and from continuing the misrepresentation and fraud that continues to cause PBR irreparable harm and that may cause harm to innocent third parties.

Consequently, PBR seeks a preliminary injunction on each and every bank account the wired funds were received into and were then dispersed. Further, Plaintiff seeks relief for the consequential damages incurred by PBR because of the Pezco's Defendants' unlawful conduct.

## PARTIES

1.     Plaintiff, PBR Sales, LLC is a Delaware limited liability company, with some offices at 2 Westchester Park Drive, White Plains, New York.

2

2. Defendant, Pezco International, LLC is a Florida limited liability company that may be served by serving its registered agent Juan M. Sanchez 201 SW 17th Rd 611 Miami, FL 33129. Defendant, Juan M. Sanchez is an individual residing in Miami, Florida and may be serviced with process at 201 SW 17th Rd 611 Miami, FL 33129.

## **JURISDICTION**

3. This is a civil action to recover damages stemming from the fraudulent inducement into an oil and gas contract and the breach of that contract. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and for purposes of this action, the Plaintiff is a citizen of the State of Delaware and the Defendants are citizens of the State of Florida. This Court has related claim jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over the Defendant because the Defendant maintains a place of business in the State of Florida within this judicial district.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property (money at issue) that is the subject of the action is situated in this district.

## FACTS RELEVANT TO ALL CAUSES

6. PBR Sales, LLC purchases and sells oil and gas related products. PBR entered into an agreement to purchase 265,000 gallons of Gasoil D2 from Pezco to be delivered via refinery in Curacao to a vessel named Triton Freedom IMO 7366893.

7. By and through, solely Mr. Sanchez, Pezco represented it could source and sell to PBR the 265,000 gallons of Gasoil D2 via vessel loading from a refinery in Curacao. The vessel arrived into Curacao on July 3rd, 2021. As required by the Port Authorities the customer hired a port agent, Vevco Supplies, who organizes the pilot to guide the vessel into port and takes care of the needs of the vessel such as provisions, fuel, water and their immigration matters.

8. On July 12, 2021, pursuant to the instructions given by Mr. Sanchez, PBR wired from its Bank of American account to Pezco by and through its Chase Bank account for the amount of $145,000.00. On July 14, 2021, PBR similarly wired to Pezco another $165,400.00 from Bank of America to Chase. The total of the two (2) wires is $310,400. The balance owed on the purchase agreement with Pezco was $50,000. Resultantly, PBR paid in excess of 85% of the purchase price to Pezco.

9. After sending and confirming the wires to Pezco, PBR diligently inquiring from Pezco via text and phone calls about the loading instructions from the refinery onto the vessel. No information was provided in response by Pezco.

10. On July 15th, 2021, PBR demanded the return of its wired funds as it learned that there were no loading instructions or for that matter any goods slated for PBR or Pezco by the refinery.

11. Additionally, PBR spoke directly with the refinery in Curacao and learned (how) that Pezco was never registered with the refinery. PBR confronted Pezco with this information to which Pezco responded that it registered and had sent the refineries lawyers $27,000.00 as the registration fee. Consequently, PBR asked for documents demonstrating Pezco's registration certificate or registration number. Pezco, by and through Juan Sanchez stated Pezco did not have the required documentary proof. PBR further asked for proof, evidence or any documents that Pezco actually sent the $27,000.00. That information was likewise never provided by Pezco.

12. PBR continued, almost daily, to request information, updates and proof verifying that Pezco legitimately performed the terms of the purchase agreement. Pezco failed to provide a single document demonstrating that any portion of its pre-contractual representations was real.

13. PBR, again contacted the refinery to determine if there were any way the transaction was legitimate. PBR, again was informed that Pezco never registered with the refinery and no funds were ever received by them remitted by Pezco. Again, PBR confronted Pezco When we immediately inquired from Pezco he insisted that the

money was sent to the refinery and that he had confirmation the refinery had converted the dollars to Florins, which is the local currency of Curacao.

14. PBR then revealed its conversation with the refinery in Curacao to Pezco and requested, again, documents demonstrating that it transferred funds or documents to facilitate the obtaining of oil and gas product. That information was never provided by Pezco.

15. On July 16th, 2021, PBR sent its first email to Pezco demanding the return of or funds and subsequently sent several demand letters including until the date of filing this action. Those emails went unanswered or provided no information regarding the purported transaction.

16. PBR retained text messages and voice notes from the refinery agent in Curacao making clear Pezco sent no proceeds and that no goods exist and there was never any order placed for PBR.

17. Nonetheless, Pezco carried on perpetrating its falsehoods that cargo was being loaded and paperwork was being sent to facilitate the transaction.

18. Additionally, Pezco falsely stated to PBR that the vessel was still moored at a particular location and send PBR an outdated snapshot of marine traffic. PBR called the Port Authority of Curacao and spoke with the Harbor Master about the vessel and confirmed that the vessel left port on July 28th, 2021 at 19.30 hours local time while Pezco represented to PBR that on July 31st, 2021 the vessel was moored at the Port Authority.

19. This has been one lie after the other with no proof any product being available to load for us. This is clearly a major fraud that has been conducted by Pezco.

20. In an effort to determine the legitimacy of Pezco, PBR unearthed evidence by way of a bill of lading that Pezco shipped out approximately 83,400 barrels (3.5 million gallons approximately) of Gasoil D2 from Trinidad to Surinam from a likely unlawful source. This alarmed PBR that Pezco may be engaged in unlawful activity including falsely representing its ability to lawfully source oil and gas product Below is the chart of communications evidencing PBR's attempt to confirm the legitimacy of the Pezco Defendants' representations and learning the illegality of the Pezco Defendants' actions:

| DATE | E-MAIL / TEXT |
| --- | --- |
| 07/15/2021 | **Text:** Audio Proof sent to Pezco of the Port agent (wevco agency in Curacao) advising PBR's customer that no cargo is available, nor have any instructions been given to load the customer's vessel "Triton Freedom". |
| 07/15/2021 | **Text:** Pezco saying he doesn't understand after listening to the audio proof of the port agent. He said he was on the phone with 'them' (the refinery). |
| 07/15/2021 | **Text:** Assurance the vessel will be loaded tomorrow (7/16/2021) after speaking with the refinery |
| 07/16/2021 | **Text:** Assurance from Pezco that vessel would be loaded by the end of day after he spoke to the refinery. He also stated that he requested the loading codes from them. |
| 07/16/2021 | **Text:** (From PBR to Pezco) showing an e-mail that was sent from CRU refinery to the port agent (Wevco) stating they have no instructions to load the vessel "Triton Freedom". |
| 07/16/2021 | **E-mail:** *Immediate Return of Funds*. PBR requesting their funds to be returned due to non-delivery of the product. |
| 07/19/2021 | **Text:** PBR informing Pezco that the port agent Myron *(from Wevco agency)* has received no order from the refinery to load the vessel, and warned PBR that Pezco was trying to scam them. |
| 07/19/2021 | **Text:** PBR urgently inquiring where Pezco sent the funds they received from PBR for the product. |
| 07/20/2021 | **E-mail:** *Re: Re. Wire Transfers to you for the purchase of 265,000* |

| | |
|---|---|
| | *gallons of Gasoil D2.* PBR requesting Pezco to show proof that funds were sent to the refinery for the product, as the refinery claimed no funds were received. They also had no knowledge of any pending orders. |
| 07/20/2021 | **E-mail:** *Re: Re. Wire Transfers to you for the purchase of 265,000 gallons of Gasoil D2.* PBR requesting reply from Pezco. (They did not inform where they sent the funds.) |
| 07/26/2021 | **E-mail:** *Re. Our Order of 265,000 Gallons of Gasoil D2.* Requesting clarity on the matter of where the funds went as the refinery did not receive anything |
| 07/27/2021 | **Text:** PBR inquiring if Pezco spoke to someone associated to the refinery |
| 07/27/2021 | **E-mail:** *Re. Gasoil D2 265,000 Gallons.* Follow up email from PBR as no response was received from Pezco. |
| 07/27/2021 | **E-mail:** *Re. Gasoil D2 265,000 Gallons.* Another follow up email from PBR. |
| 07/28/2021 | **Text:** Pezco saying he has nothing and that he is requesting the money back ASAP. |
| 07/31/2021 | **Text:** Pezco showing that vessel was still at port waiting to be loaded. However records show vessel departed on 07/28/2021 at 19:36. |
| 08/02/2021 | **E-mail:** *Re: Re. The Triton Freedom.* No receipt of confirmation that the funds were sent back to PBR. Also, Pezco sent a map location image showing the vessel was at the port waiting to be loaded. (However, this could not be real as the port authority confirmed the vessel had left the port due to no cargo being allocated for them). |

## Count I

## Breach of Contract

21. Plaintiff realleges the material factual allegations in the preceding paragraphs.

22. PBR contends that an enforceable contract exists between it and Pezco for Pezco to source and provide oil and gas product from a refinery in Curacao to board a vessel named the Triton Freedom for a price $310,400.

23. PBR performed the terms of the contract. Specifically, PBR wired $310,400 to Pezco for the purchase of Gasoil D2 in the quantity of 265,000 gallons.

24. Pezco materially breached the agreement by failing to provide the product paid for in advance.

24. Resultantly, PBR suffered damages by the money owed to its clients, the money paid to Pezco for the product and expenses relating to securing the product.

## Count II

## Fraud in the Inducement

25. Plaintiff realleges the material factual allegations in the preceding paragraphs.

26. Pezco is liable to PBR for fraudulent inducement.

27. Pezco, by and through, Juan M. Sanchez falsely represented to PBR that it could source and provide 'fuel' and load same on a vessel in a refinery in Curcacao for this price at this time frame for this price.

28. Juan M. Sanchez, acting on behalf of Pezco, made those representations orally and in writing in prior the execution of the purchase agreement between PBR and Pezco. He repeated those representations in writing and orally several times through (time). Mr. Sanchez, acting in his capacity as owner and president of Pezco knew or should have known, at that time that those representations were made, were false. Mr. Sanchez certainly knew when he accepted the wired proceeds from PBR that he did not contract with the refinery to provide product to a vessel arranged to receive product purchased by PBR or that it (Pezco) would ever make arrangements for the purchase of that product.

29. Alternatively, Mr. Sanchez' statements to PBR, particularly those that preceded PBR's initial wiring of money, can be construed as promises that Mr. Sanchez never intended to fulfill.

30. Again, Sanchez made those misrepresentations with the intent that PBR act on them and PBR did in fact act on those representations. PBR reasonably relied on those misrepresentations when it sent hundreds of thousands of dollars to Pezco. PBR received nothing in exchange for sending that money, causing it injury.

## Count III

### Promissory Estoppel

31. Further, and in the alternative, Pezco is liable to PBR for promissory estoppel. Pezco, by and through its owner, Juan M. Sanchez, promised PBR that if PBR paid the $310,000 (the agreed price was $360,400, however it was rerpresented the refinery would load the vessel with the fuel while Pezco held $310,000) for the purchase of 265,000 gallons of Gasoil D2, Pezco would provide the fuel.

32. Pezco could foresee that PBR would rely on this promise, and PBR reasonably and substantially relied on that promise in sending money to Pezco. The only way to avoid injustice is to enforce Pezco's promise.

## Count III

### Conversion

33. Further, Pezco is liable to PBR for conversion. To establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a

10

preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so. *See Navid v. Uiterwyk Corp.*, 130 B.R. 594, 595-596 (M.D.Fla.1991)

34. The money that PBR sent to Pezco as instructed was PBR's personal property. Pezco had, and has, the right to possess that property immediately. PBR delivered that money to Pezco for safekeeping and with the intent that it be kept segregated and used solely for the purpose of purchasing 265,000 gallons of Gasoil D2. The money is substantially in the form that it was when it was delivered, and it isn't subject to a title claim by the person keeping it. PBR demanded the return of that money, but Pezco refuses or is unwilling to relinquish control over it. Pezco is wrongfully and unlawfully exercising control over the money, and that exercise is injuring PBR.

## Count IV

## **Pierce the Corporate Veil**

35. In Florida, A corporate officer may not be held individually liable on a contract unless he signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder. *Ryan v. Wren*, 413 So. 2d 1223, 1224 (Fla. 2d DCA 1982).

36. Here, Juan M. Sanchez, the sole owner and operator of Pezco, intentionally made false statements to PBR regarding Pezco's ability to provide the product at

11

issue. Mr. Sanchez used Pezco to pretend it could perform the commercial transaction contemplated and paid form by PBR. Mr. Sanchez engaged in this improper conduct solely to deceive PBR in pretending Pezco was a reputable and capable company. The false statements of Mr. Sanchez was the proximate cause of PBR's loss of the money advanced.

## Count V

### Civil Theft

37.     PBR is entitled to recover against Pezco and Sanchez for civil theft. Pezco acting by and through Sanchez intended to deprive PBR of the wired proceeds and use the proceeds for their own purposes. PBR vetted every statement made by the Defendants regarding the status of the purported transaction. Each statement made by the Defendants, including but not limited to the payment of the product in Curcacao, the status of the vessel to the status of the product was false. Those statements would not have been false but for the clear intent to deprive PBR of its proceeds to the benefit of the Defendants.

38.     The Defendants felonious conduct results in civil theft under Florida Statute s. 772.11 entitling PBR to treble damages and attorneys' fees.

## Damages

### Compensatory Damages

39.     PBR is entitled to recover the money he sent to Pezco to compensate for its pecuniary loss, loss of profits and out of pocket losses.

40.   Additionally, PBR is entitled to recover damages that were the consequence of the Pezco's breaches and torts. These include lost profits—the amount that PBR would have made from the sale of the fuel purchased from Pezco. Further, PBR loss the use of the money advanced to timely satisfy creditors. See e.g.,

| Description | Debit | Credit |
|---|---|---|
| Pezco Wire – 7/12/2021 | $145,000 | |
| Pezco Wire – 7/14/2021 | $165,400 | |
| Received back from Pezo – 7/23/21 | | $80,000 |
| Port Agency Fees | $30,000 | |
| Exchange conversion to Dollars | $20,000 | |
| Loss of Profit | $64,000 | |
| Attorney's Fee's | | |
| Vessel Charter Hire | $120,000 | |
| Fuel Charges: $4/gallon – 10,000 | $40,000 | |
| Customer Claim on PBR | $90,000 | |

**Claim Total: $594,400 sought from Defendants**

## Exemplary Damages

41.   Pezco defrauded, and acted with the specific intent to cause substantial harm to, PBR. Pezco and Sanchez consciously disregarded the known, extreme risk that the dissipation of the money advanced by PBR would harm PBR. Each Defendant was actually aware that the statements and promises made to PBR were false. They are thus all liable for exemplary damages under Title XLV Chapter 768.72 of the Florida Statutes.

### Restitution

42. Allowing the Defendants to retain the money that PBR sent to them would unjustly enrich them and afford them an inequitable windfall. Thus, PBR is entitled to restitution of the amounts that he sent to the Defendants.

### Disgorgement

43. Allowing the Defendants to retain profits and interest that they obtained from the use of PBR's money would unjustly enrich them and afford them an inequitable windfall. Thus, PBR is entitled to have the Defendants disgorge those profits and interest after an accounting of the bank accounts in which PBR's proceeds were deposited.

### Legal fees and costs

44. PBR is entitled to recover its legal fees from Pezco and Sanchez. PBR is entitled to recover the reasonable and necessary legal fees that it incurs in holding the defendants to the terms of their agreements. PBR hired lawyers to enforce those terms, and it is entitled to recover the reasonable and necessary fees that it incurs in doing so.

45. Because they have committed statutory fraud, PBR is also entitled to recover his legal fees from the defendants under § 772.104, Fla. Stat. and § 772.11, Fla. Stat.

### Interest

46. PBR is entitled to pre- and post-judgment interest under the common law, principles of equity, the applicable Florida statutes authorizing same.

### Preliminary and Permanent Injunction

47. The Defendants have no viable defense or explanation for any of their fraudulent activities, and PBR is likely to succeed on all of its claims. However, for purposes of a preliminary injunction, PBR need only rely upon its proof of funds sent and no product ever existing or provided to PBR to justify the requested injunctive relief.

#### PBR Is Likely to Succeed on Its Claims

48. The Court should issue a preliminary and permanent injunction prohibiting the Defendants from using or further dissipating the proceeds obtained from PBR to further its business operations and to prevent immediate and irreparable harm to PBR caused by Defendants' improper and unlawful actions. PBR's ownership of the proceeds is established and the Defendants' refusal to accurately or factually account for the money makes clear the Defendants' nefarious conduct and constitute prima facie evidence of, inter alia, of the legitimacy of the Defendants' request for the money.

49. The fraud is irrefutable here. The Pezco Defendants' fraudulent use of PBR's money obtained by a blatant scheme to deceive demonstrates PBR's likelihood to succeed on the merits.

### PBR Will Be Irreparably Injured Absent an Injunction

50. The Pezco Defendants' fraudulent conduct and repeated false statements to further mask and disguise its unlawful conduct, again demonstrates a blatant scheme to deceive PBR. There can be no doubt that immediate irreparable harm to PBR will follow from the Pezco Defendants' continued use of PBR's proceeds in its business operations or for Defendant Sanchez' personal use makes clear that Pezco is likely without resources to satisfy any judgment this Court may later enter. Consequently, PBR cannot easily be compensated through monetary damages since the Pezco Defendants' modus operandi is to engage in fraud to fund their operations. The fact that the Pezco Defendants employ deceptive practices and engage in intentionally deceptive and fraudulent tactics demonstrates the untrustworthiness of the Pezco Defendants. Those who choose to do business with the Pezco Defendants on the mistaken belief that they are a legitimate and funded business operation are likely to, also be victimized by the Defendants.

51. PBR also will suffer irreparable injury because it is difficult to quantify in monetary terms the diminution in PBR's goodwill and the harm to the distinctiveness PBR providing product to its clients. Specifically, the transaction to which Pezco was to provide fuels places PBR in the position of default to its client. Accordingly, the Pezco Defendants' unlawful conduct irreparably harms PBR in a manner that monetary damages cannot remedy.

<u>The Balance of Hardships Unquestionably Favors PBR</u>

52. Any harm to the Pezco Defendants in the event of a preliminary or permanent injunction is of their own doing and as a result of their decision to embark on a fraudulent scheme, rather than developing their business through legitimate means.

<u>An Injunction Is in the Public Interest</u>

53. Granting a preliminary injunction in this case serves the strong public interest in stopping fraud. Without an injunction by this Court, the Pezco Defendants' will continue and will leave members of the public open to being victimized by their fraudulent conduct. The Pezco Defendants cause confusion in the marketplace and with prospective customers confused in thinking that they are dealing with a trusted entity, when they are not. By preventing unauthorized and unlawful conduct of the Pezco Defendants and the deceptive and wrongful use of PBR's funds an injunction will preserve the funds or what is left of the funds and further the goals preventing the confusion of the public.

**Hearing / Oral Argument**

54. Plaintiff respectfully request that the Court set the matter for hearing/argument as soon as possible in the venue most convenient for the Court after the Defendants are served and filed their appearance herein. Plaintiff is available for a telephonic hearing, if most convenient for the Court.

## PRAYER FOR RELIEF

WHEREFORE, PBR prays for the following relief:

 A. That this Court grant preliminary and permanent injunctions pursuant to the powers granted it under 15 U.S.C. § 1116, Fed. R. Civ. P. 65, and at common law, enjoining and restraining the Pezco Defendants and their principals, agents, servants, and employees, and all those working in concert with the Pezco Defendants, directly or indirectly from:

 i. further dissipating, withdrawing or using any amount up to $310,400 of the wired funds in any account in which the proceeds was deposited and/or later withdrawn and re-deposited;

 ii. from destroying, altering, concealing or manipulating any documents relating to the purchase of 265,000 gallons of Gasoil D2 by PBR;

 B. That this Court enter judgment that the Pezco Defendants individually, jointly and severally liable to PBR for breach of contract, fraud, civil theft and are estopped from withholding the proceeds advanced to Pezco by PBR in the manner complained of above;

 C. That this Court, pursuant to the powers granted to it award to PBR and against the Pezco Defendants, treble damages and profits, and reasonable attorneys' fees because there has been intentional conduct and theft by the Pezco Defendants;

 D. That this Court, pursuant to the powers granted it award to PBR and against the Pezco Defendants, damages, profits, and costs;

E. That this Court, pursuant to the powers granted it, award to PBR and against the Pezco Defendants, PBR's reasonable attorneys' fees because this is an exceptional case and applies under the Florida civil theft act;

F. That this Court award punitive and exemplary damages against the Pezco Defendants and in favor of PBR by reason of the Pezco Defendants' intentional or reckless disregard for PBR's rights and the rights of those defrauded;

G. That this Court hold each of the Pezcp Defendants jointly and severally liable for any underlying tort committed in furtherance of their civil theft and fraud;

H. That costs of this action be awarded to PBR; and

I. That this Court grant such other and further relief as it deems just and reasonable.

Respectfully submitted,

**Shamis & Gentile, P.A.**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299
*Counsel for Plaintiff and the Class*

**GREALISH MCZEAL, P.C.**
Marcellous S. McZeal
United State Southern District of Tex. Admission No.: 21271
United States Supreme Court Admission No.: 306368
E-Mail: mmczeal@grealishmczeal.com
700 Louisiana St., 48th Floor
Houston, Texas 77002
(713) 255-3234 – Telephone
(713) 783-2502 – Facsimile

19

*pro hac vice forthcoming*

**ATTORNEYS FOR PLAINTIFF,
PBR SALES, LLC**