UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22909-CIV-WILLIAMS/SANCHEZ

PBR SALES, LLC,

    Plaintiff,

v.

PEZCO INTERNATIONAL, LLC
and JUAN M. SANCHEZ,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on the Motion for Summary Judgment (ECF No. 44) filed by the plaintiff, PBR Sales, LLC ("PBR"). In that motion, PBR seeks summary judgment on PBR's Count I claim for breach of contract and on PBR's related Count III claim for promissory estoppel.

On February 9, 2023, United States District Judge Kathleen M. Williams referred PBR's motion for summary judgment to the undersigned for a Report and Recommendation. ECF No. 66. Following a careful review of the parties' filings, the pertinent portions of the record, and the applicable law, and the undersigned being otherwise duly advised on the matter, the undersigned recommends that PBR's motion for summary judgment be GRANTED AS TO LIABILITY ON COUNT I and DENIED ON COUNT III.

1

## I. THE UNDISPUTED FACTS

The following are the undisputed facts that are material to the resolution of PBR's Motion for Summary Judgment.

**A.     Pezco's July 8th Invoice to PBR for the Sale of Diesel D2 Fuel**

On July 8, 2021, defendant Pezco International, LLC ("Pezco") invoiced PBR for a sale of 265,000 gallons of Diesel D2 fuel for $360,400. ECF No. 44-2 (PBR's Statement of Material Facts) at ¶ 1; ECF No. 47-1 (Defendants' Opposing Statement of Facts) at ¶ 1; ECF No. 44-1 at Ex. 1 (invoice);[1] ECF No. 55 (Joint Pretrial Stipulation) at 3. That invoice, which is designated on its face as "COMMERCIAL INVOICE #041," bears the legend "INVOICE PEZCO INTERNATIONAL LLC" across the top left of the form above a logo for Pezco. ECF No. 44-1 at Ex. 1. Pezco's invoice identifies "PBR SALES LLC" as the "Customer" for the Diesel D2 fuel sale and lists customer contact information for PBR. *Id.* Pezco's invoice further designates defendant Juan M. Sanchez as the point of contact for the sales transaction, requests PBR to wire payment on the invoice (an immediate advance payment of 25% of the total sales price with the remaining 75% to be paid after product verification) to Pezco's bank account, and provides detailed wiring instructions. ECF No. 44-2 at ¶¶ 2-3; ECF No. 47-1 at ¶¶ 2-3; ECF No. 44-1 at Ex. 1. The invoice additionally specifies that its "Validity" extends from July 8, 2021 to August 31, 2021. ECF No. 44-1 at Ex. 1.

Pezco's July 8, 2021 invoice to PBR is signed by Sanchez as "CEO/PRESIDENT" of "PEZCO INTERNATIONAL LLC." ECF No. 44-2 at ¶ 2; ECF No. 47-1 at ¶ 2; ECF No. 44-1 at Ex. 1. Pezco and PBR are the only parties mentioned on the invoice (aside from identification of their respective contact persons, Pratap Sapra and Juan Sanchez), and nothing on the invoice

---

[1] The invoice is also reproduced as Exhibit 7 in ECF No. 47-2.

indicates in any way that Pezco was acting as either an agent or broker for anyone on the Diesel D2 fuel sale for which Pezco invoiced PBR. ECF No. 44-1 at Ex. 1.

**B.       PBR's Wiring of Payment to Pezco in Accordance with Pezco's Invoice**

On July 12, 2021, PBR wired $145,000 to Pezco in accordance with Pezco's request and the instructions on Pezco's invoice. ECF No. 44-2 at ¶ 4; ECF No. 47-1 at ¶ 4; ECF No. 55 at 3; ECF No. 44-1 at Ex. 2. Two days later, on July 14, 2021, PBR wired an additional $165,400 to Pezco in accordance with Pezco's request and the instructions on Pezco's invoice. ECF No. 44-2 at ¶ 5; ECF No. 47-1 at ¶ 5; ECF No. 55 at 3; ECF No. 44-1 at Ex. 3. In total, PBR paid Pezco $310,400. ECF No. 44-1 at Exs. 2-3; ECF No. 44-2 at ¶¶ 4-5; ECF No. 47-1 at ¶¶ 4-5; ECF No. 55 at 3.

During the two weeks after PBR wired payment to Pezco, PBR (through Pratap Sapra) repeatedly expressed to Pezco its concerns that Pezco had not yet delivered nor made arrangements to deliver the fuel for which PBR had already paid Pezco over $300,000; Pezco (through Sanchez) communicated reassurances to PBR that the matter was being addressed and that the fuel would be delivered. *See, e.g.*, ECF No. 44-2 at ¶¶ 6-14; ECF No. 47-1 at ¶¶ 6-14; ECF No. 44-1 at Exs. 4, 5, 7, 9, 12.

**C.       The July 30th ATSC**

On July 30, 2021, PBR and Pezco executed an "Authorization to Sell and Collet [sic]" ("ATSC") that was prepared on Pezco letterhead. ECF No. 44-1 at Ex. 15. That ATSC reaffirmed the sales agreement memorialized in Pezco's July 8th invoice to PBR; documented the payments that PBR had already made to Pezco to purchase the D2 fuel; documented the $80,000 that Pezco had returned to PBR pending delivery of the fuel; represented that the Triton Freedom (the vessel

PBR was utilizing) would be loaded with the fuel; and reaffirmed PBR's obligation to pay Pezco the balance of $130,000 upon delivery of the fuel:

> We, **PEZCO INTERNATIONAL LLC** . . . represented by **JUAN SANCHEZ**, President/CEO, ("Seller") . . . with full legal and corporate authority, hereby confirms by this Authority to Sell and Collect that **PBR SALES LLC**, has the **FULL LEGAL AUTHORITY TO SELL AND COLLECT** the product D2, stated here to the company **PBR SALES LLC**, in the capacity as the owner of the product with the quantity of approximately [306,659] Barrels, currently located in tank storage at CRU Curacao Refinery utilities B.V. in Emmastad, Curacao in Tanks #215, #524, #528, #530, #531 and #535.
>
> We [Pezco] confirm that we already have received payment from [PBR] in the form of wires totaling US $310,400.00, of which US $80,0000.00 was returned by [Pezco].
>
> Your vessel "Triton Freedom" IMO: 7366893 will be loaded and issue [sic] the relevant shipping documents to release the vessel from the Port.
>
> Upon completion of loading, and confirmation from the port [PBR] will pay [Pezco] the balance payment of US $130,000.00.

ECF No. 44-1 at Ex. 15; *see also* ECF No. 44-2 at ¶¶ 15-18; ECF No. 47-1 at ¶¶ 15-18.

In the ATSC, Pezco represented itself as the "Seller," and Sanchez signed the document as "President/CEO." ECF No. 44-1 at Ex. 15. Sapra also signed the ATSC on behalf of PBR. *Id.* As with Pezco's July 8, 2021 invoice, Pezco and PBR are the only parties mentioned in the ATSC, and nothing in the ATSC indicates in any way that Pezco was acting as either an agent or broker for anyone on the Diesel D2 fuel sale addressed in the ATSC. *Id.*

D.     **The Non-Delivery of the Diesel D2 Fuel**

Notwithstanding PBR's payments to Pezco of $310,400, the 265,000 gallons of Diesel D2 fuel that were the subject of Pezco's invoice were never delivered to PBR. *See, e.g.*, ECF No. 55 at 2, 3. Pezco did, however, return $80,000 to PBR. *See, e.g.,* ECF No. 44-2 at ¶ 16; ECF No. 44-1 at Ex. 15.

4

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) *(*quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986)); *see also, e.g.*, *Luke*, 50 F.4th at 95.  The existence of a factual dispute by itself is not enough to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48.  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.  An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004)); *see also Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009) ("For factual issues to be considered genuine, they must have a real basis in the record.") (quoting *Hairston v. Gainesville Sun Pub. Co*., 9 F.3d 913, 919 (11th Cir.1993)).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); it must provide "significant, probative evidence demonstrating the existence of a triable issue of fact," *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428,

1438 (11th Cir. 1991) (en banc) (quoting *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).  The mere existence of a "scintilla" of evidence is not enough; there must be sufficient evidence to show that a reasonable jury could return a verdict for the non-moving party.  *See Anderson,* 477 U.S. at 252; *see also Shiver*, 549 F.3d at 1343 ("Speculation does not create a *genuine* issue of fact.") (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)).

### III.  DISCUSSION

In its motion, PBR contends that the undisputed facts in this case establish that PBR is entitled to summary judgment on its Count I claim for breach of contract and on its Count III claim for promissory estoppel.  As explained below, the undersigned recommends that summary judgment be entered for PBR on its Count I claim for breach of contract, but that summary judgment be denied on the Count III claim for promissory estoppel.

**A.    PBR's Entitlement to Summary Judgment
        On Its Count I Claim for Breach of Contract**

PBR first contends that the undisputed facts and record in this case establish that it is entitled to summary judgment on its breach of contract claim against Pezco.  *See* ECF No. 44 at 2-3, 9-11.

To establish breach of contract under Florida law, a plaintiff must demonstrate "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)).  To prove the existence of a contract, the following elements must be established: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega,* 564 F.3d at 1272 (citing *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)).  "[M]utual assent to a certain and definite proposition"

is required. *Aldora Aluminum & Glass Prods., Inc. v. Poma Glass & Specialty Windows, Inc.*, 683 F. App'x 764, 767 (11th Cir. 2017) (quoting *ABC Liquors, Inc. v. Centimark Corp.*, 967 So.2d 1053, 1056 (Fla. 5th DCA 2007)).

To determine whether there has been assent, courts "analyz[e] the parties' agreement process in terms of offer and acceptance" and apply an objective test to determine whether an enforceable contract exists. *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014). As the Eleventh Circuit has explained, "[u]nder the objective standard of assent, [courts] do not look into the subjective minds of the parties; the law imputes an intention that corresponds with the reasonable meaning of a party's words and acts." *Kolodziej*, 774 F.3d at 745; *see also, e.g.*, *United States v. Blankenship*, 382 F.3d 1110, 1134 (11th Cir. 2004) ("The enforceability of a contract depends on its objective representations rather than parties' subjective intentions."). Indeed, "[t]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985) (quoting *Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.,* 302 So.2d 404, 407 (Fla.1974)). Moreover, "[t]he writing itself is the evidence of what [the parties to a contract] meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document." *Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla. 1957).

1. ***The Existence of a Contract for the Sale of Fuel Between Pezco and PBR***

The undisputed facts and record evidence in this case conclusively establish the existence of a contract between Pezco and PBR for the sale of Diesel D2 fuel. On July 8, 2021, Pezco sent PBR an invoice in which Pezco—not any other party—offered to sell 265,000 gallons of Diesel D2 fuel to PBR in exchange for $360,400. ECF No. 44-1 at Ex. 1; ECF No. 44-2 at ¶¶ 1-3; ECF

7

No. 47-1 at ¶¶ 1-3. The invoice was created by Pezco, signed by Sanchez as the CEO and President of Pezco, does not mention any parties other than Pezco and PBR, and does not in any way indicate that Pezco was acting as a broker or agent for any party. ECF No. 44-1 at Ex. 1. PBR accepted that offer by wiring $310,400 to Pezco's bank account in accordance with the terms of the offer set forth in Pezco's invoice. ECF No. 44-1 at Exs. 2 & 3; *see also* ECF No. 44-2 at ¶¶ 16, 18; ECF No. 47-1 at ¶¶ 16, 18; ECF No. 44-1 at Ex. 15. That contractual agreement—that is, the agreement established by Pezco's offer and PBR's acceptance—is further memorialized in the July 30, 2021 ATSC (*i.e.*, the "AUTHORIZATION TO SELL AND COLLE[C]T") that was also issued by Pezco and signed by Sanchez in his capacity as "President/CEO." ECF No. 44-1 at Ex. 15. In that document, Pezco represents itself as the "Seller" and owner of D2 fuel that is to be delivered to PBR (more specifically, to the vessel "Triton Freedom") in exchange for PBR's payment of $360,400. *Id.* The ATSC further sets forth that PBR had already paid $310,400 to Pezco, that Pezco had returned $80,000 to PBR, and that PBR was to pay the balance of the $360,400 purchase price (*i.e.*, $130,000) to Pezco upon the loading of the fuel. *Id.*

These undisputed facts establish the existence of a contract between Pezco and PBR for the sale of 265,000 gallons of Diesel D2 fuel for $360,400. *See, e.g.*, *Beautyman v. Lilyandmajor, LLC*, No. 20-81290-CV, 2021 WL 1264228, at *4 (S.D. Fla. Feb. 1, 2021) ("A valid contract arises when the parties' assent is manifested through written or spoken words, or 'inferred in whole or in part from the parties' conduct.'") (quoting *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010)); *Chantilly Condo., Inc. v. Hellas Eng'g, Inc.*, 342 So. 3d 275, 276-77 (Fla. 3d DCA 2022) (holding that invoice, even without subsequent payment, evidenced the parties' agreement to the invoice's terms and bound the party who issued the invoice to those terms); *Dodge of Winter Park, Inc. v. Morley*, 756 So. 2d 1085, 1085-86 (Fla. 5th DCA 2000) ("Generally, it is enough that the

party against whom the contract is sought to be enforced signs it."); *see also, e.g.*, *Vega,* 564 F.3d at 1272 (setting forth elements required to establish existence of a contract).

Significantly, Pezco does not dispute the existence of an agreement to sell 265,000 gallons of D2 Diesel fuel to PBR for $360,400, nor does it dispute that that sales agreement was memorialized through Pezco's July 8, 2021 invoice to PBR. *See, e.g.*, ECF No. 47 at 5-6; ECF No. 47-2 at 4-5. Instead, Pezco argues that it has no obligations under that agreement because Pezco was not the seller that entered into that sales agreement but was instead simply a broker working on behalf of a third party, Ernesto Sangiovanni, who was the ostensible source of the fuel.

According to Pezco, it "operates as a broker in various commodities" and had introduced PBR to Sangiovanni. ECF No. 47-2 at ¶¶ 2, 3(a)(i). According to Pezco, PBR thereafter "communicated directly" with Sangiovanni about the D2 fuel, and "Sangiovanni confirmed that he had spoken with [Pezco] and that they had worked out 265,790 gallons of D-2." ECF No. 47-2 at ¶ 4; ECF No. 47 at 5. Pezco further maintains that Pezco issued its July 8, 2021 invoice to PBR "[b]ased on the statements from both [PBR] and Sangiovanni." ECF No. 47-2 at ¶ 4; ECF No. 47 at 6. Based on those assertions, Pezco in effect contends that, notwithstanding the written terms of the July 8th invoice (or the July 30th ATSC) in which Pezco offered to sell 265,000 gallons of D2 Diesel fuel to PBR for $360,400, Pezco was not and never intended to act as the seller of that fuel.

Regardless of what Pezco's subjective intent may have been due to its relationship and communications with Sangiovanni, the undisputed objective representations made by Pezco on July 8, 2021 establish that Pezco—not any third party—offered to sell 265,000 gallons of D2 Diesel fuel to PBR for $360,400 and that PBR thereafter accepted that offer when it wired Pezco $310,400 in compliance with the terms of the invoice's sales offer. *See, e.g.*, *Blankenship*, 382

9

F.3d at 1134 ("The enforceability of a contract depends on its objective representations rather than parties' subjective intentions."). Pezco's account that "Sangiovanni confirmed that he had spoken with [PBR] and that they had worked out 265,790 gallons of D-2" does not create any genuine issue of fact that would undermine the existence of the sales contract *between Pezco and PBR* that was created through Pezco's July 8th invoice to PBR, a contractual agreement between Pezco and PBR that was later reaffirmed and further memorialized in the July 30th ATSC issued by Pezco as the "Seller." Indeed, Pezco's vague, indefinite, and hearsay assertions about what Sangiovanni reported that he had purportedly "worked out" with PBR are both immaterial to the question of whether Pezco contractually obligated itself to sell Diesel D2 fuel to PBR and insufficient to create any genuine issue of fact regarding the existence of the Diesel D2 fuel sales contract between Pezco and PBR. *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 898-99 (1990) (explaining that an affidavit will not create a genuine issue of material fact when it is conclusory or fails to provide specific necessary facts); *Anderson*, 477 U.S. at 252 ("mere existence of a scintilla of evidence" will not suffice to create a genuine issue of fact); *Burger King Corp. v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1315-16 (11th Cir. 2009) (holding that nonmovant failed to create a genuine issue of fact through affidavits that were too vague and lacking in necessary factual detail); *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 777 (11th Cir. 2020) (holding that affidavits "were insufficient to create a genuine issue of material fact for summary judgment purposes" where they "lacked specific details . . . and otherwise contained only unsupported factual assertions"); *Org. of Pro. Aviculturists, Inc. v. Kershner*, 564 F. Supp. 3d 1238, 1247 (S.D. Fla. 2021) ("[A]ffidavits that are based upon '[b]ald conclusions, opinions, and hearsay without supporting specific facts are not admissible and do not create a genuine issue of material fact.'") (quoting *Venerio v. Fed. Express Corp.*, No. 17-22624, 2018 WL 5283876, *5 (S.D. Fla. Sept. 17, 2018)).

Similarly, the mere assertion that the July 8th invoice was "[b]ased on" some unexplained and unarticulated hearsay statements from PBR and Sangiovanni, *see* ECF No. 47-2 at ¶ 4; ECF No. 47 at 6, also fails to create any genuine issue of fact concerning whether a contract was created *between Pezco and PBR* through the actions taken by Pezco (*i.e.*, the issuance of the July 8th invoice/offer) and PBR (*i.e.*, the wiring of payment on the invoice to Pezco). *See, e.g.*, *Burger King Corp.*, 572 F.3d at 1315-16; *Kershner*, 564 F. Supp. 3d at 1247-49. Indeed, even if PBR and Sangiovanni (the reported source of the fuel) communicated directly about the amount of fuel that PBR was seeking to purchase and the substance of their reported discussions in some unexplained way led Pezco to issue its July 8th invoice to PBR, that does not alter the undisputed fact that it was Pezco—not Sangiovanni or anyone else—that, through its invoice, contractually obligated itself to sell the Diesel D2 fuel to PBR in exchange for the payment of $360,400 to Pezco.[2] And although Pezco may maintain that it only acted as a broker for Sangiovanni in the fuel sale to PBR, Pezco has offered no evidence whatsoever that it in fact contracted with PBR only as an agent rather than as a principal in the Diesel D2 fuel sale.[3] On the contrary, the undisputed facts and documents in the record demonstrate otherwise.[4]

---

[2] Even though PBR may have had discussions with Sangiovanni as the ostensible source/supplier of the Diesel D2 fuel that was the subject of Pezco's July 8th invoice, that simply does not create any genuine issue of fact regarding the identity of Pezco as the seller. The undisputed facts demonstrate that it was Pezco—not Sangiovanni—that acted as the seller and offered to sell the Diesel D2 fuel to PBR via Pezco's July 8th invoice, which produced the agreement between Pezco and PBR that Pezco later confirmed, as the seller of the fuel, in its July 30, 2021 ATSC.

[3] Significantly, in the affidavit of Juan Sanchez that was submitted by the defendants in opposition to PBR's motion for summary judgment, Sanchez never states that Pezco was acting only as a broker/agent for Sangiovanni in the Diesel D2 fuel sale to PBR, nor does he state that Pezco ever notified PBR that it was acting in that broker/agent capacity when Pezco sent PBR the July 8th invoice for the sale of the Diesel D2 fuel or when Pezco later executed the July 30th ATSC. *See* ECF No. 47-2.

[4] In support of its arguments that it was acting as a broker rather than a principal in the sale of Diesel D2 fuel to PBR, Pezco relies on two contracts for the sale of two other, different products (UREA and PET COKE) to PBR. *See* ECF No. 47 at 4-5; ECF No. 47-2 at ¶¶ 3-4 & Exs. 4, 6.

Given the undisputed facts and documents in the record, PBR has established the existence of a contract between Pezco and PBR in which Pezco agreed to sell 265,000 gallons of D2 Diesel fuel to PBR for $360,400.  On this record, no reasonable jury could find otherwise.  *See, e.g.*, *Anderson*, 477 U.S. at 249.

### 2. *The Material Breach of the Contract for the Sale of Fuel*

The undisputed facts also establish that the Pezco breached the contract to sell Diesel D2 fuel to PBR.  Indeed, it is undisputed that, although PBR paid Pezco $310,400 (of which Pezco returned $80,0000), no fuel was ever delivered to PBR.  *See, e.g.*, ECF No. 55 at 2, 3.

### 3. **PBR Suffered Damages Resulting from the Breach**

Finally, the undisputed facts in this case also establish that when Pezco breached the contract and failed to deliver fuel to PBR, PBR suffered damages that include, at a minimum, the loss of $230,400 (that is, the $310,400 which PBR wired to Pezco less the $80,0000 that Pezco returned).

---

Given the undisputed facts in the record, PBR has established that there is no genuine dispute as to any material fact concerning its Count I claim for breach of contract and that it is

---

Pezco, however, fails to explain how those two separate contracts are in any way material to the issue of whether an entirely different third contract for the sale of Diesel D2 fuel was created between Pezco and PBR.  Additionally, those documents do nothing to support Pezco's contentions that it was acting as a broker for Sangiovanni in the sale of Diesel D2 fuel to PBR.  Indeed, in both of those contracts, Pezco—not Sangiovanni—was the contractual seller of the products (UREA and PET COKE) to PBR.  ECF No. 47-2 at Ex. 4 (explicitly identifying Pezco as the "Seller"); ECF No. 47-2 at Ex. 6 (same).  Nothing in those sales contracts indicates that Pezco entered into those agreements in any capacity other than as the seller of the pertinent products (UREA and PET COKE), and nothing in those contracts establishes that Pezco entered into those agreements as a broker or agent for Sangiovanni or anyone else.

entitled to judgment on liability on that claim as a matter of law.[5] Accordingly, the undersigned recommends that the Court grant summary judgment to PBR as to liability on Count I.

**B.     Summary Judgment Should Be Denied on
        PBR's Count III Claim for Promissory Estoppel**

PBR also seeks summary judgment on its Count III claim for promissory estoppel. However, because PBR is entitled to summary judgment on its Count I claim for breach of contract, PBR's claim for promissory estoppel is rendered moot and should accordingly be denied.

As explained above, the undisputed facts in this case have established the existence of a contract for the sale of Diesel D2 fuel between PBR and Pezco. But "[t]here can be no . . . promissory estoppel claim when there is an express contract between the parties." *JI-EE Indus. Co. v. Paragon Metals, Inc.*, No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010); *see also, e.g.*, *Richmond Manor Apts., Inc. v. Certain Underwriters at Lloyd's London*, No. 09-60796-CIV, 2011 WL 13175618, at *5 (S.D. Fla. Feb. 28, 2011) ("Promissory estoppel . . . may not be asserted where there is a valid contract."); *Jones v. Miami-Dade Cnty.*, No. 03-20674-CIV, 2005 WL 2456884, at *10 (S.D. Fla. Apr. 7, 2005) ("Under Florida law, promissory estoppel is unavailable when a written contract between the parties covering the dispute exists."). Claims for breach of contract and for promissory estoppel "are alternatives for each other." *Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 65 (Fla. 3d DCA 1998). "The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Doe*, 717 So. 2d at 65. However, where there is a valid contract, as is the case here, "promissory estoppel is not an available claim." *Richmond Manor*,

---

[5] Because the nature and extent of PBR's contractual damages have not been addressed in the parties' summary judgment filings, summary judgment is only warranted as to liability on PBR's breach of contract claim.

13

2011 WL 13175618, at *6.

Because a contract between PBR and Pezco governed the Diesel D2 fuel sale that is at issue in this case, promissory estoppel has ceased to be a viable alternative claim for relief at this stage of this case, and summary judgment on Count III should accordingly be DENIED.

## IV.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that the plaintiff's Motion for Summary Judgment (ECF No. 44) be **GRANTED IN PART AND DENIED IN PART**.  More specifically, I recommend that the Court grant summary judgment to plaintiff PBR Sales, LLC on the issue of liability on its Count I claim for breach of contract, but deny summary judgment on the Count III claim for promissory estoppel.

**No later than seven (7) days from the date of this Report and Recommendation** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections.  Response to any written objections to this Report and Recommendation will be due **no later than seven (7) days after the filing of those objections.**  Only those objected-to factual findings and legal conclusions may be reviewed on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida, this 24th day of February, 2023.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:     Hon. Kathleen M. Williams
        Counsel of Record